EDWARDS, Judge.
This case involves a determination of liability under a construction contract and application of the lien provisions of the Private Works Act.
The action arises out of a verbal agreement for construction of an apartment complex entered into between Michael A. Ragu-sa and Frank M. Burns, Jr. The agreement provided that Ragusa was to serve as general contractor for the project, to be built on land owned by Burns in Tangipa-hoa Parish. Ragusa began construction work shortly thereafter, in April of 1978. The chronology of significant events which followed that agreement and resulted in this litigation are as follows:
June 26, 1978 — Burns and Ragusa entered into a written construction contract for the project. At that time, a significant portion of the work had been completed.
August 31, 1978 — Burns conveyed the property to Burns Enterprises, Inc. Burns was the president of that corporation.
September 22, 1978 — The building contract was recorded in the mortgage records of Tangipahoa Parish.
June 30, 1979 — Burns Enterprises, Inc. sold the property to Charles E. Reeves by cash sale with assumption of mortgage.
September 4, 1979 — Burns, in his capacity as president of Burns Enterprises, Inc., signed a certificate of substantial completion for the project.
October 24, 1979 — As a result of Burns’ failure to pay the outstanding balance of the building contract, Ragusa filed a notice of general contractor’s lien in the mortgage records of Tangipahoa Parish.
October 26, 1979 — Ragusa filed suit against Burns.
Ragusa’s original suit sought payment of the outstanding balance on the contract, damages, attorney’s fees and recognition of his lien rights. Ragusa filed a notice of lis pendens in the mortgage records on May 7, 1980. Subsequently, Ragusa filed an amending and supplemental petition naming as additional defendants Burns Enterprises, Inc.; Charles E. Reeves; and Kathy Gaunt Burns, the wife of Frank M. Burns, Jr. The amending and supplemental petition predicated the asserted liability of Burns Enterprises, Inc. and Reeves upon the transfers of the property outlined above.
All of the defendants filed reconventional demands against Ragusa. The reconven-tional demands sought the following damages:
“A. Penalties under Paragraph 6(d) of the building contract for demurrage in the amount of $60.00 per day from January 12, 1979, until the completion of the contract, which has not yet occurred, thereby making the exact calculations of said sums impossible, but said sums are estimated to be $150,000.00
“B. Estimated cost of completion and correction of items not done in workmanlike manner and/or not completed. 100,000.00
“C. Satisfaction of outstanding claims, liens, and/or privileges 30,000.00
“D. Attorney’s fees incurred or to be incurred as a result of the necessity of retaining counsel to enforce the contract in accordance with Paragraph 9 of the building contract. 25,000.00
“E. Loss of revenue from apartments which cannot and could not be rented during remedial repairs and work. 18.000.00
TOTAL DAMAGES. $323,000.00”
Following trial on the merits, judgment was rendered in favor of plaintiff and against all defendants, “jointly, solidarily and in solido” in the total amount of $60,-714.12. The damages awarded represented the balance due on the building contract plus attorney fees. Defendants’ reconven-tional demands were dismissed. Finally, the trial court ordered cancellation of the general contractor’s lien filed by Ragusa.
Charles E. Reeves has suspensively ap *660 pealed the judgment of the district court.[1] Reeves contends that the trial court erred in the following respects: (1) holding that he was liable to Ragusa on the construction contract; (2) failing to award him damages against Ragusa for improper workmanship; (3) failing to award damages against Ragu-sa for wrongful filing of the general contractor’s lien and lis pendens; and (4) miscalculating the amounts owed to Ragusa under the construction contract.
REEVES’ LIABILITY TO RAGUSA
Reeves was not a party to the contract between Burns and Ragusa. In its written reasons, the trial court concluded that Reeves was nevertheless liable thereunder because the sale from Burns Enterprises, Inc. to Reeves occurred after recor-dation of the building contract. Reeves contends that the trial court erred in holding him personally liable to Ragusa on the building contract. We agree.
The mere fact that Reeves acquired the property after recordation of the building contract does not establish personal liability on his part under the contract. In Glassell, Taylor & Robinson v. John W. Harris Associates, Inc., 209 La. 957, 26 So.2d 1 (1946), the Louisiana Supreme Court rejected a similar contention made by a subcontractor. The court held that the Private Works Act did not operate to make a subsequent purchaser of property personally liable to the subcontractor in the same manner as the original owner who entered into the contract. The following language from the court’s decision illustrates that principle:
“The owner referred to throughout the act is, obviously, the owner at the time the contract is entered into for the construction of the work and not the owner at the time the claim is recorded or the suit is filed.... It therefore follows that the housing corporations in this case are only liable in rem unless in their acquisition of the property they specifically assumed the liability of their vendor.”
26 So.2d at 6, 7.
This principle enunciated in the Glassell decision is also present in Article 2019 of the Louisiana Civil Code, which provides as follows:
“Considered with respect to those who have contracted them, some real obligations are also personal; such are those created by mortgage for the payment of a debt. Others are strictly real, both as to the contracting party and his heirs or other successors. A mortgage given to secure the debt of another, without any obligation of personal responsibility, is an example of this latter kind. But no real obligation is personal, as to a subsequent possessor of the property on which it is created, unless he has made it such by his own act.”
Thus, Reeves has no liability to Ragusa unless he has specifically assumed liability under the building contract.
Ragusa asserts that Reeves’ personal liability is established by three documents: the building contract itself; the cash sale with assumption of mortgage from Burns Enterprises, Inc. to Reeves; and a counter letter agreement executed by Reeves, Burns Enterprises, Inc. and Mr. and Mrs. Burns on the same date as the sale to Reeves. Our examination of these three documents reveals that none of them creates any personal liability on the part of Reeves for the obligations under the building contract.
The contract itself does provide that all the obligations therein “shall inure to the benefit of and be binding upon the heirs, successors and assigns of the respective parties hereto.” However, Reeves was not a party to that contract. A binding contract requires consent of the parties to be bound thereby. La.C.C. art. 1779, 1798. We have also reviewed the act of sale and counter letter and find no indication in ei *661 ther document that Reeves made the obligations of the building contract personal to himself. The only obligation which Reeves assumed in the act of sale was for the payment of the mortgage note. Likewise, the counter letter agreement contains no assumption by Reeves of liability on the building contract. The counter letter agreement is an acknowledgment by Reeves of the retention of a one-half undivided interest in the property by Burns Enterprises, Inc. Reeves assumed no liability therein for the obligations of the building contract; in fact, the agreement specifically provides that only Burns and Burns Enterprises, Inc. will be liable on the contract.
We conclude, therefore, that the trial court erred in assessing personal liability against Reeves on the building contract.[2] Reeves was not a party to the contract. The record is totally devoid of any agreement by Reeves to assume any obligations thereunder. There is absolutely no basis for any liability on the part of Reeves.
FAILURE TO AWARD DAMAGES FOR FAULTY WORKMANSHIP
Reeves contends that the trial court erred in refusing to award him damages against Ragusa for faulty workmanship. All of the defendants sought such damages in their reconventional demands, and the trial court rejected their claims.
In its written reasons for judgment, the trial court concluded that the problems which resulted in the apartment complex were not the fault of Ragusa, but stemmed from Burns’ efforts to have the complex constructed as cheaply as possible. Reeves challenges that factual finding, and relies upon the testimony of his own witnesses. It is sufficient to note that appellate review of such factual findings will not be reversed absent a finding of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). Our review,of the record reveals no such error in the trial court’s finding that the problems with the apartment complex were not the fault of Ragusa’s workmanship, but stemmed from Burns’ efforts to cut corners on the project.
Even if we were to conclude that Ragusa is, liable for damages for faulty workmanship, Reeves is not the proper party to collect such damages. Any such damages would arise as an incident of the construction contract. As noted above, Reeves was not a party to that contract. Nevertheless, Reeves asserts that he is entitled to any damages arising out of the contract because both he and Burns Enterprises, Inc. acquired the property with full warranty and subrogation. However, the counter letter agreement specifically provides that Burns and Burns Enterprises, Inc. retain all rights to pursue any claims against Ra-gusa arising out of construction of the apartment complex. Clearly, even if Ragu-sa were liable in damages for faulty workmanship, there would be no liability to Reeves.
RAGUSA’S LIABILITY FOR FILING INVALID LIEN AND LIS PENDENS
The trial court correctly found that Ragusa was not entitled to a general contractor’s lien because of two violations of the provisions of the Private Works Act. The building contract was recorded after commencement of the work, and was recorded over thirty days after the date of its execution. See former LSA-R.S. 9:4802. Thus, recordation of the contract failed to create a valid contractor’s lien on the property. Gulfco Finance Company of Marrero v. Malone, 230 So.2d 269 (La.App. 4th Cir.1969), cert. denied, 255 La. 341, 230 So.2d 835 (La.1970). The court ordered the lien cancelled from the mortgage records.[3]
*662 Reeves contends that the trial court erred in failing to award him damages for the wrongful filing of the notice of general contractor’s lien and lis pendens by Ragu-sa. He contends that Ragusa knew, at the time he personally filed the notice of lien, that recordation of the building contract was insufficient to create any in rem claim against the property. Reeves asserts that Ragusa’s knowing filing of an invalid lien and lis pendens renders him liable in damages to Reeves.
The trial court did not err in failing to award Reeves damages for wrongful filing of the lien and lis pendens. Our review of Reeves’ reconventional demand, as well as the reconventional demand filed by the other defendants, reveals that they did not allege such wrongful filing by Ragusa or seek any damages therefor. Accordingly, the trial court could not have rendered judgment for any such alleged damages.
DECREE
For the foregoing reasons, that portion of the district court’s judgment which rendered judgment in favor of plaintiff and against defendant, Charles E. Reeves, is reversed and judgment is hereby entered dismissing plaintiff’s claims against Reeves with prejudice; and the judgment is amended to order that the notice of lis pendens filed on behalf of plaintiff, Michael A. Ra-gusa, and recorded on May 7,1980, in MOB 343, page 217, of the records of the Parish of Tangipahoa, State of Louisiana, be and is hereby cancelled. The remaining portions of the district court’s judgment are affirmed. All costs of this appeal are to be borne by plaintiff-appellee, Michael A. Ra-gusa.
REVERSED IN PART, AFFIRMED IN PART, AND AMENDED.

. No appeals were taken by the remaining defendants. Accordingly, the judgment of the trial court is final as to them.

. In light of this holding, Reeves’ assignments of error contesting the amount of damages calculated by the trial court will not be addressed.

. In an apparent oversight, the trial court neglected to order cancellation of the notice of lis pendens. This court will order that cancellation.