836 So.2d 1211 (2003)
WILL DRILL RESOURCES, INC., Plaintiff-in-Concursus,
v.
HUGGS, INC., et al., Defendants-in-Concursus-Appellants; Defendants-in-Concursus-Appellees.
No. 36,797-CA.
Court of Appeal of Louisiana, Second Circuit.
January 29, 2003.
Roy M. Lilly, Jr., Minden, Campbell, Campbell & Marvin by C.A. Marvin, for Defendants-in-Concursus-Appellants, Shirley Ann Gladney Prince, Timothy King Gladney, Dovie Elizabeth, Gladney Hensley, Kimbell Tatum Hays, Patricia Hays Bryan, Emma Hays Atkins, Frances Hays Bays, L.H. Featherston, III, Lewis Odom, and Judd & Company.
Weiner, Weiss & Madison by John S. Hodge, Shreveport, for Plaintiff-in-Concursus, Will Drill Resources, Inc.
Cook, Yancey, King & Galloway by J. William Fleming, F. Drake Lee, Robert Kennedy, Jr., Shreveport, for Defendants-in-Concursus-Appellees, Huggs, Inc., Rock Creek Ranch I, Ltd., Sirius Corporation and LHS, Smith & Smith, Ltd., L.L.P.
Before BROWN, KOSTELKA and DREW, JJ.
*1212 KOSTELKA, J.
The royalty owners of Gladney Well No. 1 ("Royalty Owners") appeal the summary judgment granted in favor of Huggs, Inc., Rock Creek Ranch I, Ltd., Sirius Corporation and LHS, Smith & Smith, Ltd., L.L.P. (collectively referred to herein as "Huggs"), awarding them contested royalty payments. We affirm.

FACTS
The pertinent facts of this matter are set forth in this court's previous opinion in Will-Drill Resources, Inc. v. Huggs Inc., 32,179 (La.App.2d Cir.08/18/99), 738 So.2d 1196, writ denied, 99-2957 (La.12/17/99), 751 So.2d 885, and will not be repeated here. In that case, this court reversed a summary judgment by the trial court which had awarded the Royalty Owners disputed royalties based upon the determination that a Pugh Clause contained in the mineral lease was activated. Conversely, this court found that the Pugh Clause was not operative under the facts of this case. Thereafter, on January 11, 2001, Huggs filed a motion seeking disposition of the royalties in accordance with this court's prior opinion. On February 9, 2001, Royalty Owners opposed the motion and sought an exception of no cause of action. On February 12, 2001, the trial court denied Huggs's motion for entry of judgment.
Previously, on February 9, 2001, Royalty Owners had also filed a Motion for Leave to File an amended petition and an Amended Petition. Huggs opposed this motion and sought summary judgment on August 3, 2001, again based upon the prior ruling of this court. After a hearing on September 27, 2001, the trial court allowed Royalty Owners to amend the petition and took Huggs's summary judgment under advisement until the completion of discovery. On February 13, 2002, Royalty Owners opposed Huggs's motion for summary judgment and included four affidavits which sought to establish that a genuine issue as to the intent of the original parties to the lease remained for trial. Huggs moved to strike the affidavits as incompetent summary judgment evidence. After a February 14, 2002 hearing, the court formally granted both Huggs's summary judgment and motion to strike, without reasons, on March 12, 2002. This appeal ensued.

DISCUSSION
On appeal, Royalty Owners suggest that the summary judgment was improvidently granted due to the existence of ambiguities in the lease relating to the Pugh Clause. Based upon the law-of-the-case doctrine, however, we affirm the summary judgment.
In our initial examination of the lease, because neither party, including Royalty Owners, contended that any ambiguity in the Pugh Clause existed, we conducted our examination of the Pugh Clause as written in Paragraph 19[1] of the lease. We found that the language chosen by the parties to express their intent regarding the operation of the Pugh Clause clearly indicated that the clause became operative only when leased land is pooled or combined with other lands, another lease or leases. Because the "units" in the present case were combined with no other lands, but were comprised entirely of the leased premises, we found that the Pugh Clause was not activated.
Nevertheless, after our determination, Royalty Owners were allowed to file an amended petition which alleged that the *1213 language used in the lease did not reflect the true intent of the parties. Moreover, in their opposition to Huggs's motion for summary judgment, Royalty Owners again contended that the intent of the parties should be evaluated due to an ambiguity in the lease created by Paragraph 7 which "altered the definition" of Paragraph 19, the Pugh Clause addressed by this court in the earlier opinion. On appeal, Royalty Owners reurge these arguments in support of their claim that summary judgment was inappropriate.
We are unpersuaded by Royalty Owners' novel attempt at piecemeal litigation. Under the law-of-the-case doctrine, upon a second appeal, an appellate court will not reconsider its earlier ruling in the same case. That policy applies against those parties involved in the litigation at the time of the prior decision and who have had their day in court. Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971); Webb Const., Inc. v. City of Shreveport, 33,654 (La.App.2d Cir.08/23/00), 766 So.2d 607, writ denied, 2000-2674 (La.11/17/00), 774 So.2d 982; Coldwell Banker J. Wesley Dowling and Associates, Inc. v. City Bank and Trust of Shreveport, 25,684 (La. App.2d Cir.03/30/94), 634 So.2d 959. The reasons behind the policy include avoiding indefinite relitigation of the same issue, obtaining consistent results in the same case, fairness to the parties involved, and affording one opportunity for argument and decision on the issue. Id.
Obviously, the present appeal concerns some of the same parties involved in the same litigation as the previous appeal. The point of dispute here is whether the issue sought to be resolved in the present appeal is the same issue decided by this court in its earlier opinion. In the circumstances before us, we conclude that it is.
As discussed above, in the previous appeal, this court was called upon to determine whether the subject Pugh Clause was activated under the facts of this case. Relying there on the parties' legal representations that no ambiguity existed therein, we evaluated the Pugh Clause as written in Paragraph 19 of the lease. Nowhere in the previous proceedings did Royalty Owners mention Paragraph 7 of the lease or argue ambiguity in the lease provisions. Rather, it was only after this court's decision that Royalty Owners for the first time contended that the lease was ambiguous. On these grounds, Royalty Owners now request that this court reevaluate the Pugh Clause in question. We find this endeavor, however, to be no more than a reinvention of the argument in support of Royalty Owners' position that the Pugh Clause should be activated. Royalty Owners do not contend that our previous decision somehow created the alleged ambiguity which otherwise would not have reasonably been noticed by the parties. The same lease which contains the two paragraphs at issue formed the underlying basis for the entire case. Therefore, any alleged ambiguity certainly existed at the time of the previous proceedings when Royalty Owners, who were parties to the entire proceedings, earlier had their day in court. In these circumstances, we find that our review at this time would qualify as nothing more than a reconsideration, although on different grounds, of an issue already decided by this court, i.e., the applicability and interpretation of the Pugh Clause to the facts of this case. To now revisit this issue would violate the law-of-the-case doctrine and the policy reasons for which it was enacted. Accordingly, we conclude that our earlier determination that the Pugh Clause, as written, clearly was not activated under the facts of this case now precludes a reexamination of the activation of the provision based upon Royalty Owners' ambiguity claim. As a matter of law, the summary judgment *1214 granted in favor of Huggs was appropriate.[2] Costs of this appeal are assessed to Royalty Owners.
AFFIRMED.
NOTES
[1] Both sides also confessed that the entirety of the Pugh Clause was contained in Paragraph 19 of the lease.
[2] In light of this determination, it is unnecessary that we address the trial court's ruling on the motion to strike the affidavits submitted by Royalty Owners.